UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT BURWELL,

        Plaintiff,                                       Hon. Ellen S. Carmody

v.                                                    Case No. 1:06 CV 601

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/


## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On December 7, 2006, the parties consented to proceed in this Court for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred the matter to this Court. (Dkt. #11).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The standard

affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age on the date of the ALJ's decision. (Tr. 19). He earned a General Educational Development (GED) diploma and worked previously as a carpenter and upholsterer. (Tr. 19, 102, 107, 119-25).

Plaintiff initially applied for benefits on April 12, 1999, alleging that he had been disabled since February 5, 1999, due to back, leg, and arm pain. (Tr. 18, 70-72). Plaintiff's application was denied, a determination which Plaintiff did not appeal. (Tr. 18). Following this denial, Plaintiff returned to work. (Tr. 82-88).

Plaintiff next applied for benefits on July 10, 2003, alleging that he had been disabled since February 5, 1999,[1] due to numbness in his hands, as well as back, knee, and shoulder pain. (Tr. 73-75, 101). Plaintiff's application was denied, after which time he requested a hearing before an ALJ. (Tr. 30-69). On March 3, 2005, Plaintiff appeared before ALJ Michael Finnie, with testimony being offered by Plaintiff and vocational expert, Paul Delmar. (Tr. 488-536). In a written decision dated November 18, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 18-29). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff then initiated this appeal pursuant to 42 U.S.C. § 405(g).

---

[1] At the administrative hearing, Plaintiff amended his disability onset date to January 2002. (Tr. 493-94).

**MEDICAL HISTORY**

On November 27, 2002, Plaintiff participated in a colonoscopy, the results of which revealed no evidence of perianal disease. (Tr. 205).

On January 6, 2003, Plaintiff was examined by Dr. James Surrell. (Tr. 194). The doctor reported that Plaintiff was experiencing pruritus ani, but that there existed no evidence that Plaintiff was suffering from an anal fistula. As part of this examination, Plaintiff participated in a sigmoidoscopy, the results of which were "negative." Plaintiff was instructed to begin a high fiber diet with fiber supplements. *Id.*

On July 10, 2003, Plaintiff was examined by Dr. Robert Halter. (Tr. 234-35). Plaintiff reported experiencing knee and elbow pain. (Tr. 235). Plaintiff reported that he "normally works as a carpenter, [but] sometimes drives a dozer." An examination of Plaintiff's knees and elbows revealed "some tenderness," but was otherwise unremarkable. (Tr. 235). Plaintiff also underwent a series of x-rays. (Tr. 198-201). X-rays of Plaintiff's left elbow revealed "no apparent fracture or other osseous or articular abnormality." (Tr. 198). X-rays of Plaintiff's right elbow likewise revealed "no apparent fracture or other osseous or articular abnormality." (Tr. 199). X-rays of Plaintiff's left knee revealed "no evidence of acute fractures or dislocations." (Tr. 200). Moreover, the joint spaces were "maintained" and the soft tissues were "intact." *Id.* X-rays of Plaintiff's right knee revealed "no evidence of acute fracture or dislocations." (Tr. 201). Moreover, the joint spaces were "maintained" and there existed no evidence of foreign bodies. *Id.* Dr. Halter concluded that

> As far as [Plaintiff's] work status is concerned, there is nothing that would specifically limit him from work. He will have difficulty

>   doing hard physical labor because of the tenderness in his knees. There may be other positions that he could be able to do.

(Tr. 233).

On August 8, 2003, Plaintiff reported that if he is having a "good day" he goes sailing and fishing. (Tr. 147).

On September 12, 2003, Plaintiff participated in an MRI examination of his left knee, the results of which revealed a "very small joint space effusion and small amount if edema," but were "negative for meniscal or ligamentous tear." (Tr. 250). Plaintiff also participated in an MRI examination of his right knee, the results of which revealed a "strain or small partial tear of the medial collateral ligament," a "small amount of edema," and a "very small joint space effusion." (Tr. 248). There was, however, no evidence of a meniscal tear. *Id.*

On October 14, 2003, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed "mild to moderate" degenerative changes and a "broad-based eccentric disk bulging or protrusion" at L5-S1. (Tr. 246-47).

On June 14, 2004, Plaintiff participated in a lumbar discogram,[2] the results of which revealed: (1) no evidence of annular abnormality or diffuse bulging at L2-3; (2) diffuse bulging and "slight" encroachment of the neuroforamina at L3-4; (3) diffuse bulging and "slight" encroachment of the nerve roots at L4-5; and (4) a disc protrusion at L5-S1 which "causes some effacement of the peroneal fat surrounding the right S1 nerve." (Tr. 309-11).

---

[2] A discogram is a procedure in which dye is injected into the center of the intervertebral discs. *See* Discogram, *available at* http://www.allaboutbackpain.com/html/spine_diagnostics/spine_diagnostics_discogram.html (last visited on August 21, 2007). The dye makes the disc clearly visible on x-ray film. This procedural is utilized to determine whether a disc "has structural damage and whether it is causing pain." This procedure "is usually done prior to surgery to help the doctor know the location of the problem and the type of operation needed." *Id.*

On July 27, 2004, Plaintiff underwent back surgery performed by Dr. Paul Davis. (Tr. 345-47). Specifically, the doctor performed a right L5-S1 partial laminectomy and discectomy and an S-1 nerve root decompression. *Id.*

On August 3, 2004, Plaintiff participated in an EMG and nerve conduction examination, the results of which revealed: (1) "mild to moderate" ulnar neuropathy at or near the level of the right elbow; (2) "borderline to mild" ulnar neuropathy at the level of the left elbow, with no evidence of denervation; and (3) "residual conduction abnormalities" in the bilateral nerve distribution at the wrist "of doubtful current clinical significance." (Tr. 456-57).

On August 20, 2004, Plaintiff was examined by Dr. Davis. (Tr. 410). Plaintiff reported that his pain was "better" and that he was ambulating with "greater comfort." Plaintiff exhibited "full" motor power and straight leg raising was negative. *Id.*

On October 1, 2004, Plaintiff was examined by Dr. Davis. (Tr. 409). Plaintiff reported that he was experiencing leg pain which "improved with activity and worsened with static posture." Plaintiff exhibited "good" strength and walked with a "mildly antalgic" gait. *Id.*

Plaintiff returned to Dr. Davis on October 20, 2004. (Tr. 408). Plaintiff reported that he was experiencing pain in his buttocks which radiated into his leg. He reported that his pain was "worse when he stops activity, such as sitting or standing." Plaintiff exhibited "full" strength and straight leg raising was negative. The results of an MRI examination were unremarkable. Dr. Davis concluded that Plaintiff's pain was "most consistent with L5 radiculitis and pain in the L5 distribution." *Id.* The doctor recommended that Plaintiff receive a nerve root injection, which he received on January 14, 2005. (Tr. 408, 436).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations provide a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if an individual suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) status-post partial lumbar laminectomy and discectomy; (2) degenerative disc disease; (3) bilateral knee and elbow pain; (4) status-post anofistulotomy; and (5) obesity. (Tr. 27). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 28). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 28-29). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he can lift/carry 10 pounds occasionally and less than 10 pounds frequently; (2) he can stand and/or walk 2 hours during an 8-hour workday; (3) he can sit for 6 hours during an 8-hour workday; (4) he can occasionally climb ramps and stairs; (5) he cannot climb ladders, ropes, or scaffolding; and (6) he must avoid

concentrated exposure to unprotected heights. (Tr. 26). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Paul Delmar.

The vocational expert testified that there existed approximately 31,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 532-33). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

      a. The ALJ Properly Discounted Plaintiff's Subjective Allegations

Plaintiff asserts that his testimony regarding his pain and limitations demonstrates that he is disabled. The ALJ discounted Plaintiff's subjective allegations of pain and disability, however, concluding that such was "inconsistent with narrative office records prepared by treating and examining sources, results of examinations conducted by treating and examining sources, a treating-source opinion as to probable difficulty performing hard physical labor, the results of conventional testing, his activities of daily living, and exaggerated presentation at the hearing." (Tr. 28).

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As the ALJ correctly observed, none of Plaintiff's care providers have imposed on Plaintiff limitations which are inconsistent with the ALJ's RFC determination. Moreover, the objective medical evidence, detailed above, fails to support Plaintiff's subjective allegations. In sum, while the Court does not doubt that Plaintiff's impairments impose certain limitations, there exists substantial evidence supporting the ALJ's credibility determination.

b.  The ALJ Properly Considered Plaintiff's Claim for Unemployment Benefits

In assessing Plaintiff's credibility, the ALJ observed that in 2003 Plaintiff "was approved for unemployment compensation" which "suggests that [Plaintiff] held himself out as ready, willing and available to work." (Tr. 25).  Plaintiff asserts that it was improper for the ALJ to discount his credibility based on such evidence.

In *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794 (6th Cir., July 29, 2004), the Sixth Circuit found that when assessing a claimant's credibility it was proper for an ALJ to consider whether the claimant applied for unemployment benefits.  *Id.* at 801-02.  Specifically, the court stated that "[a]pplications for unemployment and disability benefits are inherently inconsistent." *Id.* at 801.  Thus, there exists "no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work." *Id.* at 801-02.

Accordingly, the ALJ, in assessing Plaintiff's credibility, properly considered that Plaintiff was simultaneously seeking disability benefits and unemployment benefits.  More importantly, as Defendant correctly observes, the ALJ's credibility determination was based on numerous findings as the language quoted in the preceding section demonstrates.  The ALJ's observation regarding Plaintiff obtaining unemployment benefits constituted two sentences out of a several page discussion of Plaintiff's credibility.  Thus, Plaintiff's argument in this regard is without merit.

      c. Plaintiff is not entitled to Remand

As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 487). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 5-8). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148.

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Id.* To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional material consists of the results of a December 12, 2005 MRI examination of Plaintiff's lumbar spine. This examination revealed "generalized disc bulging at L3-L4 and L4-L5 causing mild bilateral lateral recess encroachment, similar to the previous study." (Tr. 487). It is not reasonable to assert that consideration of this material by the ALJ would have led to a different result. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: September 6, 2007                    /s/ Ellen S. Carmody
                                           ELLEN S. CARMODY
                                           United States Magistrate Judge